UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY GERALD LAGINESS,

      Petitioner,

                                      CASE NO. 14-11582

v.                                   HONORABLE PAUL D. BORMAN

DAN HEYNS,

      Respondent.
_____/

**OPINION AND ORDER**
**DENYING THE HABEAS CORPUS PETITION,**
**DENYING A CERTIFICATE OF APPEALABILITY, AND**
**GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Petitioner Anthony Gerald Laginess has filed a *pro se* habeas corpus petition under

28 U.S.C. § 2254. The petition challenges Petitioner's conviction for one count of

acceptance of a bribe by a public official. *See* Mich. Comp. Laws § 750.118. Petitioner

alleges as grounds for relief that his trial attorney was constitutionally ineffective and that

the prosecutor committed misconduct. The State argues in an answer to the petition that

Petitioner procedurally defaulted his prosecutorial-misconduct claim and that the state

courts' rejection of Petitioner's claims did not result in decisions that were contrary to

federal law, unreasonable applications of federal law, or unreasonable determinations of

the facts. Having reviewed the pleadings and record, the Court concludes that

Petitioner's claims lack merit. Accordingly, the petition will be denied.

## I.  Background

The charge against Petitioner arose when the Michigan Attorney General investigated Adam Korejsza's contractual dealings with the City of River Rouge, Michigan.[1]  During the investigation, Korejsza told the authorities that he had obtained a drug-prescription contract with the City by bribing Petitioner, who was a city councilman at the time.  Korejsza ultimately pleaded guilty to several charges, including embezzlement, in return for a favorable sentence.

Petitioner was charged with accepting Korejsza's bribe in return for his vote on Korejsza's bid to win the drug-prescription contract with the City of River Rouge.  As explained by the state court, Petitioner's criminal conduct

> occurred between September 1, 2006 and January 1, 2007, during which time [Petitioner] was a member of the River Rouge City Council.  For several weeks in the fall of 2006, the City Council was involved in the process of choosing a new healthcare provider for city employees and retirees.  Several different companies were bidding on the contract and making presentations to the mayor and the City Council as part of the bidding process.  The prosecution alleged that [Petitioner] accepted a $5,000 bribe from Adam Korejsza, a representative of one of the companies, in exchange for his vote to award that vendor the contract.

*People v. Laginess,* No. 306965, 2013 WL 275918, at *1 (Mich. Ct. App. Jan. 24, 2013).

At Petitioner's jury trial in Wayne County Circuit Court, Korejsza testified that

> he approached [Petitioner] after one of the city council meetings and asked him what it was going to take for him to change his vote, and [Petitioner]

---

[1]  The Michigan Attorney's General Office prosecuted Korejska and Petitioner as part of an initiative to root out public corruption.  (9/26/11 Trial Tr. at 58.)  For ease of reference, the Court will refer to the assistant attorney general who handled the two cases as "the prosecutor."

2

> responded with "five grand or five racks or something like that," which Korejsza took to mean $5,000. Korejsza testified that just a few days later, and before the city council vote, he met [Petitioner] behind a bar near River Rouge city hall and gave him $5,000 cash in an envelope.
>
> [Petitioner], who had previously been adamantly opposed to awarding the contract to Korejsza's company, ultimately voted to do just that. [Petitioner] testified that he changed his mind based on advice from several people, including city attorneys.

*Id.*

On September 27, 2011, the jury found Petitioner guilty, as charged, of acceptance of a bribe by a public official. On October 19, 2011, the trial court sentenced Petitioner to imprisonment for seventeen months to ten years.[2]

Petitioner moved for a new trial and an evidentiary hearing on grounds that the prosecutor withheld favorable evidence from him and committed other misconduct and that his trial attorney deprived him of effective assistance. The trial court held oral arguments on Petitioner's motion and then denied the motion. Petitioner subsequently raised his habeas claims and a sentencing argument in an appeal of right. A panel of the Michigan Court of Appeals affirmed Petitioner's conviction and sentence in an unpublished, *per curiam* decision, *see id.*,[3] and on October 28, 2013, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the issues. *See People v. Laginess*, 495 Mich. 880 (2013) (table).

---

[2] Petitioner has since been released from prison. *See* http://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=818686.

[3] Judge Cynthia Diane Stephens concurred in the result only.

3

On April 21, 2014, Petitioner filed his habeas corpus petition.  He argues that his trial attorney's omissions resulted in ineffective assistance and that the prosecutor withheld favorable evidence from him and committed other misconduct.

## II.  Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)."  *Harrington v. Richter*,  562 U.S. 86, 97 (2011).  Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for Part II). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court decisions be given the benefit of the doubt,' *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (*per curiam*)." *Renico v. Lett*, 559 U.S. 766, 773 (2010). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). To obtain a writ of habeas corpus from a federal court, a state prisoner must show that the state court's ruling on his or her claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

### III. Analysis

**A. Defense Counsel**

Petitioner raises several issues concerning his trial attorney. There can be "no dispute that the clearly established federal law here is *Strickland v. Washington*," 466 U.S. 668 (1984). *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). Under *Strickland*, a

5

defendant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

The "deficient performance" prong of the *Strickland* test "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689.

To demonstrate that counsel's performance prejudiced the defense, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "This does not require a showing that counsel's actions 'more likely than not altered the outcome,' " but "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 111-12 (quoting *Strickland*, 466 U.S. at 693).

Review of an ineffective-assistance-of-counsel claim is "doubly deferential" under AEDPA,

> because counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," *Burt v. Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013) (quoting *Strickland v. Washington*, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); internal quotation marks omitted). In such circumstances, federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Burt, supra*, at ——, 134 S.Ct., at 13.

6

*Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (*per curiam*).

### 1. Trial Counsel's Alleged Failure to Request Critical Information

Petitioner claims that his trial attorney was ineffective for failing to request critical material that could have been used to impeach the prosecution's witnesses. The material in question consisted of Korejsza's written plea agreement with the prosecution and pretrial statements made by other prosecution witnesses.

### a. Korejsza's Plea Agreement

Petitioner alleges that defense counsel should have moved to produce and unseal Korejsza's written plea agreement with the prosecutor. Petitioner contends that the precise terms of the plea agreement were never disclosed to him and that defense counsel needed to know the full parameters of the plea agreement to impugn Korejsza's integrity, to neutralize his testimony, and to provide the jury with critical information regarding Korejsza's motive and credibility.

The Michigan Court of Appeals determined on review of Petitioner's claim that defense counsel was aware of the contents of the plea agreement and that his failure to move to unseal the entire plea agreement did not deprive Petitioner of a substantial defense. The Court of Appeals noted that the jurors were made aware of Korejska's plea agreement, his felony convictions, his incarceration, and his sentence and yet found his testimony credible enough to convict Petitioner. The Court of Appeals concluded that, even if defense counsel's failure to move to unseal the entire plea agreement fell below a

standard of reasonableness, there was not a reasonable probability that, but for counsel's error, the result of the proceedings would have been different.

The state court's factual findings are supported by the record, which indicates that defense counsel asked the prosecutor for a copy of Korejsza's written plea agreement. The prosecutor responded by explaining that the trial judge in Korejsza's case had sealed the plea agreement at the request of Korejsza's attorney. The prosecutor nevertheless provided defense counsel with a copy of Korejsza's plea agreement with her office, as well as the affidavit supporting the investigatory arrest warrant. *See* prosecutor Alison A. Furtaw's letter to Petitioner's trial attorney on May 18, 2011, ECF No. 9-8, Pg ID 1746; *see also* 3/10/12 Post-Conviction Mot. Hr'g at 5, 15-16.

After Petitioner's trial, the prosecutor asked Korejsza's trial judge to unseal the plea agreement for purposes of the hearing on Petitioner's post-conviction motion. Korejsza's judge denied the prosecutor's request. (3/30/12 Post-Conviction Mot. Hr'g at 4-5.) Although the judge subsequently granted the prosecutor's request for disclosure of the agreement, *see People v. Koresjza (sic)*, No. 10-4218-FH, Opinion and Order (Wayne Cty. Cir. Ct. June 4, 2012), it is clear that a pretrial motion from defense counsel to produce and unseal the plea agreement would have been futile. Attorneys are not required to file futile motions to avoid a claim of ineffective assistance. *Murray v. Maggio*, 736 F.2d 279, 283 (5th Cir. 1984).

Even if defense counsel's performance was deficient, the deficient performance did not prejudice Petitioner because the jury learned the critical details of the plea

agreement.  During her opening statement, the prosecutor explained that Korejska had

pleaded guilty to one count of racketeering, six counts of embezzlement, and three counts

of tax evasion for his role in obtaining the drug-prescription contract with the City of

River Rouge.  (9/26/11 Trial Tr. at 61-62.)

On direct examination, the prosecutor elicited Korejska's testimony that he

pleaded guilty to ten criminal charges in exchange for a guidelines sentence of seventy-

eight months (six and a half years) and that he was required to provide truthful testimony

in Petitioner's case as part of the plea agreement.  Korejska also admitted on direct

examination that he had prior convictions for false pretenses and unpaid child support.

(*Id*. at 73-74.)

On cross-examination, defense counsel elicited Korejska's testimony that his

criminal history included thirteen felony convictions.  Korejska explained that his plea

agreement was sealed, but that it entailed pleading guilty to all the counts, which

included, among other things, two convictions for failure to file an income tax return with

intent to defraud, two convictions for embezzlement of $100,000 or more, and one

conviction for embezzlement of $50,000 or more, but less than $100,000.  Korejska

stated that he was already in prison, that his sentence was a guidelines sentence of six and

a half years, and that he was required to testify truthfully in whatever hearings the

Attorney General asked him to attend in the future.  (*Id*. at 82-86.)

While there may have been additional details in the agreement that trial counsel

could have used to impeach Korejska, the Michigan Court of Appeals reasonably

9

concluded that there was not a reasonable probability the result of the trial would have

been different had trial counsel moved to unseal the entire plea agreement.  In reaching

this conclusion, the Court of Appeals noted that

> [n]umerous witnesses testified that defendant had made known his intent to
> vote against Korejsza's bid, in part, based on an understanding that one of
> the rival bidders was somehow related to defendant's wife.  In fact,
> defendant had taken to passing out flyers warning members of the City
> Council and the public against accepting Korejsza's bid.  But when it came
> time to vote, defendant made the motion to accept Korejsza's bid and voted
> in favor of his motion.  In addition, the State produced volumes of bank
> statements and records demonstrating that at the time of the alleged bribe,
> over the course of just a few days in September 2006, Korejsza withdrew
> $5,000 in cash.  Korejsza testified that he gave defendant $5,000 in cash.
> Additionally witnesses, including defendant, testified that he was
> experiencing financial difficulty at that time.  Though he admitted to having
> financial difficulties, bank records clearly revealed that defendant made a
> $1,300 cash deposit and when asked where the money came from stated
> that he could not recall.

*Laginess*, 2013 WL 275918, at *3.

In light of this evidence, as well as Korejsza's testimony about his plea agreement,

there is not a substantial likelihood that the result of the trial would have been different

had defense counsel successfully moved for disclosure of the entire plea agreement.

Therefore, the state court's conclusion – that trial counsel's omission did not prejudice

Petitioner – was objectively reasonable, and this Court must deny relief on Petitioner's

claim.

### b.  Prior Statements of Witnesses

Petitioner alleges that his trial attorney should have requested the prosecution

witnesses' prior sworn statements and transcripts from their testimony during hearings

held pursuant to investigative subpoenas. The Michigan Court of Appeals rejected this claim because Petitioner failed to demonstrate that his attorney did not request the statements and transcripts. The prosecutor, in fact, stated at the post-conviction hearing that she turned over the witness statements to defense counsel. (3/30/12 Post-Conviction Hr'g Tr. at 12, 14.) This Court therefore agrees with the Michigan Court of Appeals that there is a "dearth of evidence" to support Petitioner's claim. *Laginess*, 2013 WL 275918, at *3.

Even if the Court were to assume that trial counsel's performance was deficient, Petitioner was not prejudiced because the witnesses' trial testimony apparently was consistent with their prior statements and with what they said during the investigative hearings. (3/30/12 Post-Conviction Hr'g Tr. at 14.) The Court therefore declines to grant relief on Petitioner's allegation that defense counsel was ineffective for failing to request prior witness statements and transcripts.

### 2. Counsel's Failure to Object to Hearsay and Other "Bad Acts"

Petitioner asserts that trial counsel was ineffective for failing to object to hearsay testimony and to evidence of his other "bad acts." Petitioner alleges that the prosecutor failed to give proper notice that she would be introducing the evidence and she introduced the evidence for the improper purpose of showing propensity for criminal behavior or bad character. Petitioner claims that the evidence was inadmissible, irrelevant, and more prejudicial than probative and, therefore, defense counsel should have objected to the evidence.

11

The Michigan Court of Appeals addressed Petitioner's claim on the merits and concluded that, although trial counsel could have objected to the evidence and likely would have prevailed, his failure to object was not necessarily an error. The Court of Appeals stated that the failure to object to testimony about Petitioner's financial difficulties and possession of marijuana was a matter of sound trial strategy and that an objection would have been of little or no benefit to Petitioner. The Court of Appeals also stated that, even assuming counsel's performance fell below a standard of reasonableness, Petitioner had failed to show a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different.

### a. Failure to Object to Evidence of Financial Difficulties, Checks Written on Insufficient Funds, and Being Susceptible to Bribes

The prosecutor introduced evidence that Petitioner was having financial troubles, that he had written checks without sufficient funds to cover the checks, and that he was susceptible to being bribed. (9/26/11 Trial Tr. at 70-71, 101.) The testimony was relevant because it explained part of the reason Korejska approached Petitioner and asked Petitioner what it would take to win his vote. Because the evidence was relevant, an objection likely would have been overruled.

Furthermore, the failure to object to testimony about Petitioner's financial problems appears to have been part of the defense strategy. Defense counsel, for example, explained during his opening statement that witnesses would be testifying that they loaned Petitioner money because he was having financial difficulties at the time. Trial counsel

12

went on to say that, although a witness would testify that Petitioner deposited $1,300 in his credit union account, Petitioner did not deposit $5,000 in the account, and the issue was whether Korejska was credible. (*Id*. at 64-66).[4]  Because evidence of Petitioner's financial difficulties was consistent with the defense theory that Petitioner accepted loans from people, but not bribes, trial counsel was not ineffective for failing to object to the evidence.  Petitioner himself testified that he was struggling financially at the time and wrote "bad" checks.  (9/27/11 Trial Tr. at 89, 99-100.)

Three of Petitioner's own witnesses also testified that he was having financial difficulties in 2006.  (*Id*. at 12, 49, 62.)  One of the witnesses testified that he loaned Petitioner money on numerous occasions because Petitioner needed the money; the loans amounted to hundreds of dollars and perhaps over a thousand dollars at one point or another.  (*Id*. at 48-50).  Another witness testified that people were loaning money to Petitioner and transferring money from one account to another for him.  (*Id*. at 55.)

The Michigan Court of Appeals reasonably determined that defense counsel's failure to object to prosecution witnesses' testimony about Petitioner's financial situation would have been of little or no benefit to Petitioner.  Defense counsel's failure to object to evidence of Petitioner's financial difficulties and susceptibility to being bribed was part of a reasonable trial strategy and did not constitute ineffective assistance.

---

[4]  Although the transcript of trial indicates that the trial court made some of these remarks, it is obvious from the speaker's references to "my client" that it was defense counsel speaking.

13

### b.  Failure to Object to Evidence of Nepotism

Petitioner alleges next that defense counsel should have objected to evidence that he engaged in nepotism by favoring a vendor who was a relative of his.  (9/26/11 Trial Tr. at 70.)  Rather than objecting to the testimony, defense counsel called Petitioner's relative by marriage (Thomas Mercure) as a defense witness.  Mr. Mercure testified that, even though he had dealings with River Rouge and Petitioner was his wife's cousin, he (Mercure) had never gotten any favors from Petitioner when Petitioner was a councilman. (9/26/11 Trial Tr. at 152.)   It was reasonable trial strategy to present Mr. Mercure as a defense witness to deflect testimony from prosecution witnesses that Petitioner engaged in nepotism.

The Michigan Court of Appeals, moreover, reasonably concluded there was not a reasonable probability that, but for counsel's alleged error, the result of the proceeding would have been different.  Therefore defense counsel was not ineffective for failing to object to the testimony about nepotism.

### c.  Failure to Object to Evidence of Marijuana

Finally, Petitioner contends that defense counsel should have objected to testimony that an officer once stopped Petitioner with marijuana in his car.  The evidence was brought to the jury's attention when a portion of the transcript of Petitioner's preliminary examination was read into the record at trial.

Defense counsel's failure to object to the testimony did not prejudice Petitioner because there was no evidence that he was charged with a crime as a result of the incident

14

involving marijuana.  To his credit, defense counsel elicited testimony that Petitioner had

no prior convictions (9/27/11 Trial Tr. at 89), and the jury was informed of Petitioner's

testimony at the preliminary examination that he was merely a passenger in the car where

the marijuana was found.  (9/26/11 Trial Tr. at 134.)

The Court concludes for all the reasons given above that defense counsel's failure

to object to prior "bad acts" evidence did not rise to the level of constitutionally

ineffective assistance.  Thus, the state court's rejection of Petitioner's claim was

objectively reasonable.

### 3. Counsel's Failure to Object to Improper Questions and Statements

Petitioner's final allegation about trial counsel is that counsel failed to object to the

prosecutor's improper questions and statements.  Petitioner incorporates by reference his

arguments about the prosecutor and asserts that the prosecutor made "countless improper

questions and statements."   Br. in Support of Pet. for Writ of Habeas Corpus, at 34.  The

Court has determined below that the prosecutor's conduct was proper or harmless error.

Therefore, defense counsel was not ineffective for failing to object to the conduct.

### 4. Conclusion on Petitioner's Claim of Ineffective Assistance

The Michigan Court of Appeals adjudicated Petitioner's claim about defense

counsel on the merits and concluded that all of the errors allegedly made by trial counsel

were either unsupported by the record or were conscious decisions made as part of a

sound trial strategy.  The Court of Appeals went on to say that, even if it were to presume

that counsel's performance fell below a standard of reasonableness, Petitioner had failed

to demonstrate a reasonable probability that, but for the alleged errors, the result of the proceedings would have been different. These conclusions were objectively reasonable, and given the doubly deferential review required in habeas corpus actions, this Court concludes that Petitioner's claims about defense counsel do not warrant habeas relief.

## B.  The Prosecutor

In his second and final claim, Petitioner alleges that the prosecutor engaged in misconduct by suppressing evidence and by making improper comments throughout the trial.

### 1.  *Brady v. Maryland*

Petitioner alleges that the prosecutor deprived him of due process by failing to disclose Korejsza's plea agreement, including details regarding any leniency and other considerations that were given to Korejsza in exchange for his testimony against Petitioner.   The Michigan Court of Appeals rejected Petitioner's claim on the basis that the prosecutor fully disclosed the terms of Korejsza's plea agreement.

#### a.  Clearly Established Federal Law

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id*. at 87.  There are three components to a true *Brady* claim:  "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by

16

the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "[E]vidence is material 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Id*. at 280 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)). As the Supreme Court explained in *Banks v. Dretke*, 540 U.S. 668 (2004), "the materiality standard for *Brady* claims is met when 'the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Id*. at 698 (quoting *Kyles v. Whitley*, 514 U.S. 419, 435 (1995)).

### b. Application

As noted above, the judge in Korejska's case prohibited the prosecutor from giving Korejska's written plea agreement to defense counsel. The prosecutor nevertheless provided defense counsel with a copy of her office's agreement with Korejsza. Thus, the prosecutor satisfied her obligation to disclose exculpatory evidence in her possession.

Furthermore, as also pointed out above, defense counsel demonstrated at trial that he was aware of the basic provisions of the agreement. He was able to cross-examine Korejska on many of the details contained in the plea agreement, including the requirement that Korejska testify for the prosecution in return for a guidelines sentence of six and a half years.

Petitioner contends that Korejska was working with both state and federal prosecutors and that the jury was never informed of the extent of Korejska's cooperation.

17

But any additional information concerning Korejska's cooperation with law enforcement authorities in all likelihood would not have made a difference in the outcome of Petitioner's trial. It certainly would not have "put the whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435. Petitioner's *Brady* claim fails for this additional reason.

### 2. The Prosecutor's Comments

Petitioner alleges that the prosecutor's comments throughout trial deprived him of a fair trial. The Michigan Court of Appeals reviewed this claim for "plain error" affecting Petitioner's substantial rights because Petitioner did not make a contemporaneous objection at trial.[5] The Court of Appeals then concluded that plain error did not occur, as Petitioner failed to prove the prosecutor committed misconduct. The Court of Appeals stated that all the incidences of misconduct were within the bounds of permissible prosecutorial advocacy.

On habeas review, "[c]laims of prosecutorial misconduct are reviewed deferentially." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).

---

[5] As a result of the state court's "plain error" review, the State argues that Petitioner procedurally defaulted his claim about the prosecutor. "[I]n the habeas context, a procedural default, that is, a critical failure to comply with state procedural law is not a jurisdictional matter." *Trest v. Cain*, 522 U.S. 87, 89 (1997). And because Petitioner claims that trial counsel was "cause" for his procedural default, the Court has determined that analyzing whether Petitioner's claim is procedurally defaulted "adds nothing but complexity to the case." *Babick v. Berghuis*, 620 F.3d 571, 576 (6th Cir. 2010). The Court therefore proceeds to analyze the merits of Petitioner's claim.

18

> [I]t "is not enough that the prosecutors' remarks were undesirable or even universally condemned." *Darden v. Wainwright*, 699 F.2d [1031, 1036 (11th Cir. 1983)]. The relevant question is whether the prosecutors' comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974). Moreover, the appropriate standard of review for such a claim on writ of habeas corpus is "the narrow one of due process, and not the broad exercise of supervisory power." *Id*., at 642, 94 S.Ct., at 1871.

*Darden v. Wainwright*, 477 U.S. 168, 181 (1986).

> In deciding whether prosecutorial misconduct mandates that habeas relief be granted, the Court must apply the harmless error standard. *Eberhardt v. Bordenkircher*, 605 F.2d 275 (6th Cir. 1979). The Court must examine "the fairness of the trial, not the culpability of the prosecutor." *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1355 (6th Cir. 1993)(quoting *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947 (1982)), *cert. denied*, 510 U.S. 1201, 114 S.Ct. 1317, 127 L.Ed.2d 666 (1994).

*Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997). On habeas review, an error is harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776 (1946)).

### a. Vouching

Petitioner claims that the prosecutor vouched for her office and for Korejsza, her star witness. As examples of this, Petitioner points to the prosecutor's opening statement where she said that she worked for the Michigan Attorney General and that Petitioner's case was part of a new initiative by the Attorney General to root out public corruption. The prosecutor also stated during her opening remarks that she and a detective had investigated the case, that Korejska was required to tell the truth, and that her office was

19

authorized to withdraw the plea agreement with Korejsza if Korejsza did not tell the truth. (9/26/11 Trial Tr. 58, 61-62.)

As another example of vouching, Petitioner quotes from the prosecutor's direct examination of Korejsza, where she elicited Korejsza's testimony that he told the truth when he met with the prosecutor and the detective before trial. (*Id*. at 72.) As a final example of vouching, Petitioner quotes excerpts from the prosecutor's closing argument where she stated that everything Korejsza said was verifiable, that Korejsza was obligated to testify truthfully, that his testimony was credible, and that everything he said proved to be true. (9/27/11 Trial Tr. at 114-15, 117.)

Prosecutors must refrain from interjecting their personal beliefs into the presentation of their cases. *United States v. Young*, 470 U.S. 1, 8-9 (1985). They also should not comment on the credibility of a witness. *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir. 2005). But "[i]mproper vouching occurs when a prosecutor either (1) bluntly states a personal belief in a witness's credibility, 'thereby placing the prestige of the office of the [prosecutor] behind that witness,' or (2) 'implies that the witness's testimony is corroborated by evidence known to the government but not known to the jury.'" *United States v. Henry*, 545 F.3d 367, 378-79 (6th Cir. 2008) (quoting *United States v. Francis*, 170 F.3d 546, 550-51 (6th Cir. 1999)).

The prosecutor's comments that she worked for the Michigan Attorney General, that Petitioner's case was part of an initiative to root out public corruption, that she and a detective had investigated the case, and that her office could withdraw the plea agreement

20

with Korejsza if he did not tell the truth were factual statements, which did not constitute vouching.  Furthermore, the trial court instructed the jury that the attorneys' opening statements were not evidence, but were meant to help the jurors understand how each side viewed the case, and the jurors promised to render a verdict only on the evidence introduced at trial.  (9/26/11 Trial Tr. at 49.)  Therefore, even if the prosecutor's opening statement amounted to vouching, the error could not have had a substantial and injurious effect or influence on the jury's verdict and was harmless.  *Brecht*, 507 U.S. at 623.

Questioning Korejsza about whether he told the truth when he met with the prosecutor and the detective also did not amount to vouching, because the prosecutor did not express a personal belief in Korejsza's credibility.  Nor did she imply that Korejsza's testimony was corroborated by evidence known only to her and not the jury.

The prosecutor's closing argument presents a closer question, because she stated that Korejska's testimony was credible.  Generally, "it is improper for a prosecuting attorney in a criminal case to state his [or her] personal opinion concerning the credibility of witnesses or the guilt of a defendant."  *Hall v. Vasbinder*, 563 F.3d 222, 235 (6th Cir. 2009) (quoting *Byrd v. Collins*, 209 F.3d 486, 537 (6th Cir. 2000)).

In this case, however, the prosecutor demonstrated that her opinion was based on the fact that Korejsza's testimony was verifiable and shown to be true through other testimony.  It is not improper for a prosecutor, in his or her role as an advocate, to "seek[] to restore, through argument rather than his [or her] own personal assurance, the

credibility of his [or her] chief witness.  That is a permissible prosecutorial function." *United States v. Garcia*, 758 F.3d 714, 723 (6th Cir.), *cert. denied*, 135 S. Ct. 498 (2014).

The Sixth Circuit's "cases have found improper vouching only where the disputed remark put the spotlight on the prosecutor—the prosecutor's personal beliefs, the prestige of her office, . . . , her unique knowledge of the facts, etc." *Garcia*, 758 F.3d at 724. Measured against that standard, the prosecutor's comments at the close of Petitioner's trial were permissible because she did not emphasize her personal belief in Korejska, nor rely on the prestige of her office or any unique knowledge of the facts.  Instead, she argued on the basis of the admissible evidence that Korejska was believable.  The Court therefore finds no merit in Petitioner's claim that the prosecutor vouched for Korejska.

### b.  Misstated Facts and Unsworn Testimony

Petitioner contends that the prosecutor misstated the facts when she told the jury during opening statements that Petitioner was president of the River Rouge city council. (9/26/11 Trial Tr. at 58, 63.)   Petitioner was a city councilman at the time, not the president of the council, and he claims that the prosecutor's comment elevated his importance.

While it is true that prosecutors may not misrepresent the facts in evidence or assert facts that were never admitted in evidence, *Washington v. Hofbauer*, 228 F.3d 689, 700 (6th Cir. 2000), the prosecutor was merely making the point that Petitioner was a public official at the time he accepted a bribe.  More importantly, witnesses corrected the prosecutor's error in designating Petitioner as president of the council.  The mayor of

22

River Rouge testified that Petitioner "was probably the senior commissioner on the council" (9/26/11 Trial Tr. at 100), and Petitioner testified that he was a councilman at the time (9/27/11 Trial Tr. at 83).  The prosecutor's initial error in describing Petitioner as president of the city council was harmless, because the error could not have had a substantial and injurious effect or influence on the jury's verdict.  *Brecht*, 507 U.S. at 623.

Next, Petitioner contends that the prosecutor gave unsworn testimony and injected herself into the case when she cross-examined defense witness Mary Anne Reiman, who was the Personnel Director for River Rouge.  This occurred after the jury was permitted to ask Ms. Reiman whether Petitioner ever explained his change of mind regarding Korejska's proposed contract with River Rouge.  Ms. Reiman answered the jury's question by stating that Petitioner had said he would not have voted for Korejska's proposed contract if Reiman and others had not recommended it.  The prosecutor then asked Ms. Reiman whether Reiman had told the prosecutor and the detective that Petitioner made that remark *after* he voted on the contract.  (9/27/11 Trial Tr. at 27-28.)

Petitioner claims that the prosecutor repeated the error after Ms. Reiman testified that the city attorney had approved Korejska's proposed contract.  The prosecutor asked Ms. Reiman whether she was aware that the city attorney did not review the contract at that meeting.  (*Id*. at 33.)

Contrary to Petitioner's allegations, the prosecutor did not improperly inject herself in the case.  Her cross-examination of Ms. Reiman was designed to elicit critical facts concerning Petitioner's motive in moving for, and approving, Korejska's bid for the drug-

23

prescription contract.  Even if the prosecutor's questions amounted to unsworn testimony, Ms. Reiman minimized the insinuation that Petitioner and the city attorney had acted improperly.  She stated that she did not know whether Petitioner made his comment about the reason for his vote before or after the vote (*id.* at 29) and that the city attorney had, in fact, said that he reviewed the contract at the meeting on the vote (*id*. at 33).

The trial court, moreover, instructed the jury at the beginning of the case and in the court's final charge to the jury that the attorneys' questions were not evidence.  (9/26/11 Trial Tr. at 53; 9/27/11 Trial at 129.)  Therefore, even if the prosecutor erred when questioning Ms. Reiman, the error could not have had a substantial and injurious effect on the jury's verdict and was harmless.

### c.  Closing Remarks

#### i.  Facts Not in Evidence

Petitioner claims that the prosecutor argued facts not in evidence during closing arguments when she stated that Petitioner initially wanted his cousin's husband (Tom Mercure) to get the contract in question.  The prosecutor also stated that Mr. Mercure, as third-party administrator of the contract, would benefit from the contract because monthly fees go to the third-party administrator of the contract.  (9/27/11 Trial Tr. at 112.)

Petitioner contends that there was no testimony regarding profits or the identity of the competitor bidders.  The record, however, indicates that Mr. Mercure was one of the competitors for the health-care portion of the contract in question.  (9/26/11 Trial Tr. at 89; 153-54; 157-58.)  The prosecutor reasonably inferred that Mr. Mercure would benefit

24

from securing a portion of the contract for his company, and because prosecutors may

argue reasonable inferences from the evidence, *Byrd*, 209 F.3d at 535, the prosecutor's

argument was proper.

### ii. Civic-Duty Argument

Petitioner asserts that the prosecutor gave an improper civic-duty argument when

she stated that somebody had to put a stop to the way River Rouge did business.

Specifically, when commenting on the city's missing contracts, the prosecutor said,

"That's how business was done there."  (9/27/11 Trial Tr. at 119.)  Continuing, the

prosecutor said:

> I don't know about you, but I'm tired of that.   That is how business is done.
> That is the problem.  That's why this is a good lot.  That's why this man
> should be convicted of taking a bribe to change his vote.  That is
> unacceptable.  This is unacceptable that you can get up there and tell a
> bunch of half truths and just muddy up the waters enough to get away with
> it.
>
> We have witness testimony.  Here's a guy saying I paid the dude to change
> his vote.  He changed his vote.  Every single thing that the guy who says that
> said, it's all true.  There is nothing that they have shown that has proven that
> Adam [Korejska] was ever not telling the truth.
>
> You know what, every time somebody does that, it eventually hurts the
> people that live in the city.  It now cost the people from the city of River
> Rouge $750,000.  And if Adam gets out of prison, has a felony record, he
> can't pay it back, it's going to cost the taxpayers $750,000.  So we need –
> somebody has to put a stop to that.  Somebody has to say no more of that.
> No more doing business that way.
>
>          . . . .
>
> I know that based on the facts and information that you have heard today,
> you are, I hope, going to put a stop to that kind of behavior in River Rouge.
> Thank you.

25

(9/27/11 Trial Tr. at 119-21.)  Petitioner contends that these remarks implied that convicting him would cure the city's corruption and evil deeds.

"It is improper for a prosecutor to suggest that a jury has a civic duty to convict," *Thornburg v. Mullin*, 422 F.3d 1113, 1134 (10th Cir. 2005), and prosecutors "'should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law . . . .'" *Darden*, 477 U.S. at 191-92 (quoting the ABA Standards for Criminal Justice 3-5.8(d) (2d ed. 1980)).  But nothing prevents a prosecutor from appealing to the jurors' sense of justice, *Bedford v. Collins*, 567 F.3d 225, 234 (6th Cir. 2009), and the prosecutor in Petitioner's case urged the jurors to base their verdict on the facts in evidence.

The trial court also instructed the jurors to base their verdict only on the evidence and not to let sympathy or prejudice influence their decision.  The trial court further explained to the jurors that the attorneys' arguments were not evidence.  (9/26/11 Trial Tr. at 50-51; 9/27/11 Trial Tr. at 126, 128-30.)  These generic instructions served to mitigate any prejudice caused by the prosecutor's remarks.  *United States v. Gracia*, 522 F.3d 597, 604 (5th Cir. 2008).  Habeas relief, therefore, is not warranted on Petitioner's claim that the prosecutor made a civic-duty argument.

### 3.  Pervasive Misconduct

Petitioner alleges that the prosecutor's pervasive and unrelenting misconduct deprived him of a fair trial and undermined confidence in the jury's verdict.  The Court disagrees for the reasons given above, and, to the extent Petitioner is arguing that the cumulative effect of errors deprived him of a fair trial, the Court rejects his argument because it is not a cognizable claim on habeas review.  *Sheppard v. Bagley*, 657 F.3d 338, 348 (6th Cir. 2011).

### IV.  Conclusion

The state appellate court's adjudication of Petitioner's claims was not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or an unreasonable determination of the facts.  The state court's decision clearly was not "so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement."  *Richter*, 562 U.S. at 103.  The Court therefore denies the petition for writ of habeas corpus.

### V. Denying a Certificate of Appealability;
### Granting Leave to Proceed *In Forma Pauperis* on Appeal

Before Petitioner may appeal this Court's decision, a district or circuit judge must issue a certificate of appealability.  28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When, as here, "a district court has rejected the constitutional claims on the merits, the showing required

to satisfy § 2253(c) is straightforward:  The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.*"  Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Reasonable jurists could not debate the Court's assessment of Petitioner's constitutional claims. The Court therefore declines to issue a certificate of appealability. Petitioner nevertheless may proceed *in forma pauperis* on appeal if he appeals this decision, because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3).

s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  November 14, 2016

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 14, 2016.

s/Deborah Tofil
Deborah Tofil
Case Manager (313)234-5122

28